# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ROSENDO SOLIZ, JR.,

Petitioner,

v.

WARDEN, CSP-LAC,

Respondent.

1:06-cv-01762-OWW-TAG HC

FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS PETITION (Doc. 16)

ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN TWENTY DAYS

**PROCEDURAL HISTORY**

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The instant federal petition for writ of habeas corpus was filed on December 6, 2006. (Doc. 1)

DISCUSSION

A. Procedural Grounds for Motion to Dismiss

On March 7, 2008, Respondent filed a motion to dismiss the petition as being filed outside the one year limitation period prescribed by 28 U.S.C. § 2244(d)(1). Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ."

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990)(using Rule

4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-603 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the court should use Rule 4 standards to review the motion.

In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. § 2244(d)(1)'s one year limitation period. Because Respondent's motion is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's motion pursuant to its authority under Rule 4.

B. Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 326, 117 S.Ct. 2059 (1997). Because this action was commenced in 2006, the instant petition is subject to the AEDPA limitation period.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running pursuant to subdivision (d)(1)(A), i.e., on the date that the petitioner's direct review became final. However, where the claim is based upon newly discovered evidence, the period may commence from the date specified in subdivision (d)(1)(D), i.e., the date the "factual predicate" of the claim could have been discovered through the exercise of due diligence. In this case, Respondent contends that the former provision triggered the one-year period, while Petitioner contends that the starting date is governed by the latter provision. The Court's conclusion regarding which provision controls the starting date will, in turn, determine whether the petition is timely under the AEDPA.

On October 24, 2000, Petitioner was convicted in the Fresno County Superior Court of a home invasion robbery (Cal. Pen. Code §§ 211 & 213(a)(1)(A)), first degree burglary (Cal. Pen. Code §§ 459 & 460), and assault with a weapon (Cal. Pen. Code § 245(a)(1)). (Doc. 18, Lodged Document ("LD") 1). With various enhancements that were found to be true, Petitioner was sentenced on January 22, 2001 to an aggregate sentence of 29 years. (Id.). He appealed his conviction and sentence to the California Court of Appeal, Third Appellate District ("3d DCA"), which affirmed the judgment on August 5, 2002. (LD 2). The California Supreme Court denied his petition for review on October 16, 2002. (LD 3, 4).

Thus, pursuant to subdivision (d)(1)(A), direct review would normally have concluded on January 14, 2003, when the ninety day period for seeking review in the United States Supreme Court expired. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998). Petitioner would then have one year from the following day, January 15, 2003, or until January 14, 2004, absent applicable tolling, within which to file his federal petition for writ of habeas corpus. As mentioned, the petition was not filed in this case until December 6, 2006, almost two years after the one-year period had expired.

Petitioner, however, contends that subdivision (d)(1)(D) applies because he did not discover the factual basis for his claim of innocence until "newly discovered evidence" was brought to light,

i.e., a declaration by Petitioner's cousin, David Barrera, dated August 12, 2003, in which Barrera admits guilt for the crime for which Petitioner was convicted. (Doc. 1, Exh. A). Framed more precisely, then, the issue is whether the one-year period commenced the day after the conclusion of direct review, on January 15, 2003, or the day after the execution of the Barrera declaration, on August 13, 2003, or on some other date relating to when Petitioner could have discovered, through the exercise of due diligence, the factual predicate for his claim of innocence. Respondent's position is that the petition is untimely by 83 days if the limitation period is calculated pursuant to subdivision (d)(1)(A). If Petitioner is correct, and subdivision (d)(1)(D) applies, he will "gain" enough time from January 15, 2003 until August 13, 2003, a span of 289 days, to compensate for the 83 day lapse alleged by Respondent and thus would make the petition timely under the AEDPA.

As mentioned, under section 2244(d)(1)(D), the one-year limitation period starts on the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Hasan v. Galaza, 254 F.3d 1150, 1154, fn. 3 (9th Cir. 2001)(quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)). Due diligence does not require "the maximum feasible diligence," but it does require reasonable diligence in the circumstances. Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004)(quoting Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004); see Wims v. United States, 225 F.3d 186, 190, fn. 4 (2d Cir. 2000). It is not necessary for a petitioner to understand the legal significance of the facts; rather, the clock starts when a petitioner understands the facts themselves. Hasan, 254 F.3d at 1154 fn. 3; Owens, 235 F.3d at 359 ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognized their legal significance." To "have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." Hasan, 254 F.3d at 1154. In order to claim the benefit of tolling, it is Petitioner's burden to establish it. Tholmer v. Harrison, 2005 WL 3144089 (E.D.Cal. Nov. 22, 2005), *1; see Hinton v. Pacific Enterprises, 5 F.3d 391, 395 (9th Cir. 1993)(party seeking tolling bears the burden of alleging facts which would give rise to tolling).

///

Based upon the record now before the Court, the Court is unpersuaded that the one-year period should commence from the date the Barrera declaration was executed. This is so for several reasons.

First, Petitioner does not explain what efforts, if any, he made prior to the declaration's execution date to develop evidence of Berrera's culpability for the offense. Petitioner states in his petition in the 5th DCA that he knew that Barrera was guilty, but for his own personal reasons, could not bring himself to name Barrera as the culprit:

> "After learning of my cousin's involvement and actually being the perpetrator of which I was convicted. [sic] I could not bring myself to give my cousin up, I could not dishonor my family nor would my conscience allow me to do such a thing. I could only appeal to my cousin David Barrera [sic] my own family morals and a conscience that I knew would do the right thing, and stand up as a man to be responcible [sic] for his own actions."

(LD 9, p. 3)(emphasis supplied).

In an earlier petition to the Fresno County Superior Court, Petitioner explained his mind state this way:

> "From my arrest to date I have been frustrated, upset, depressed, outraged, disappointed, powerless, and faithless for having been convicted for a crime I did not commit but believed all along my cousin had done it but neither my conscience, upbringing, nor street and neighborhood honor allowed me to point fingers. Besides, I was not sure he had done it and had I pointed at him neither my wife or I would be safe, nor my conscience in peace. My cousin has finally confessed and I ask I be immediately released."

(LD 7, p. 3)(emphasis supplied).

Under subdivision (d)(1)(D), the one-year period commences upon the date "the factual predicate of the claim or claims presented *could have been* discovered through the exercise of due diligence." (Emphasis supplied.) Obviously, based on Petitioner's own explanations of events to the state courts, Petitioner *did* discover the factual basis for his claim at some unspecified point in time well prior to the actual execution of the Barrera declaration. Petitioner, however, provides no evidence upon which the Court could make a finding as to the exact date Petitioner *could have discovered* the factual basis for this claim, and, as mentioned, that burden of proof belongs to Petitioner alone.

Second, in the Court's view, in order for Petitioner to show that he exercised reasonable diligence in discovering the factual basis for this claim, he would have had to make his beliefs about

Barrera's involvement known to others, specifically to his trial attorney, or his appellate attorney, or to police, or prosecutors, or the state court, at the *earliest* possible date so that his counsel, or law enforcement authorities, or the state courts, could initiate a proper investigation into the merit of those allegations. Instead, Petitioner, in a misguided effort not to "dishonor" his family or neighborhood or violate his own "conscience" and "upbringing," remained silent about these matters until Barrera himself finally came forward with his declaration. This is not the exercise of "reasonable diligence" envisioned in subdivision (d)(1)(D). The statute of limitations for the federal habeas process cannot await the resolution of a petitioner's mental angst or soul-searching regarding the repercussions of implicating a family member regarding a crime for which the petitioner has been falsely convicted. To the contrary, it is the petitioner's obligation to exercise such diligence as is necessary to bring the truth to light and to permit the resources of the criminal justice system to deal with it properly.

Third, and finally, as the Court of Appeal noted, the Barrera declaration merely implicates Barrera himself. It does not factually exclude Petitioner as either an accomplice or participant in the crimes. This is particularly significant because Petitioner admitted to police that he had gone to the victim's house to confront her. (LD 15, p. 433). Because the declaration does not necessarily exculpate Petitioner as a participant in the crimes for which he was convicted, the declaration cannot logically be probative of Petitioner's innocence. Thus, viewed strictly from an evidentiary perspective, the Barrera declaration does not qualify as "newly discovered evidence" of Petitioner's innocence.

For all of these reasons, the Court concludes that Petitioner has failed to present sufficient evidence to support a finding that the one-year limitation period ran from some date later than the "normal" starting date provided for in subdivision (d)(1)(A). See Webb v. Bell, 2008 WL 2242616 (E.D. Mich, May 30, 2008)(rejecting petitioner's claim that one year period should be delayed until he obtained an affidavit from prosecution witness recanting witness's trial testimony against petitioner because the date on the affidavit was merely the notarization date, not the date the witness actually recanted his testimony, or the date petitioner actually learned of the recantation, and petitioner presented no evidence regarding his efforts to obtain the affidavit earlier or how petitioner

exercised due diligence to discover the factual basis for his claim). Accordingly, the Court concludes that the one-year limitation period expired, absent applicable tolling, on January 14, 2004. Since the instant petition was not filed until December 6, 2006, almost two years after the period expired, the petition is untimely unless Petitioner is entitled to statutory or equitable tolling.

C. Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361 (2000). An application is pending during the time that 'a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003)(internal quotation marks and citations omitted); see Evans v. Chavis, 546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold, 536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Nevertheless, there are circumstances and periods of time when no statutory tolling is allowed. For example, no statutory tolling is allowed for the period of time between finality of an appeal and the filing of an application for post-conviction or other collateral review in state court, because no state court application is "pending" during that time. Nino, 183 F.3d at 1006-1007. Similarly, no statutory tolling is allowed for the period between finality of an appeal and the filing of a federal petition. Id. at 1007. In addition, the limitation period is not tolled during the time that a federal habeas petition is pending. Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v. Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002). Further, a petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing a state habeas petition. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001). Finally, a petitioner

is not entitled to continuous tolling when the petitioner's later petition raises unrelated claims. See Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

In this case, the documents supporting the motion to dismiss establish that Petitioner filed the following state habeas proceedings: (1) filed August 23, 2001 in the California Court of Appeal, Fifth Appellate District ("5th DCA"), and denied on March 14, 2002 (LD 5, 6); (2) filed in the Fresno County Superior Court on August 30, 2003 and denied on January 5, 2004 (LD 7, 8); (3) filed in the 5th DCA on March 19, 2004 and denied on July 7, 2004 (LD 9, 10); (4) filed in the 5th DCA on July 31, 2004 and denied on June 23, 2005 (LD 11, 12); and (5) filed in the California Supreme Court on July 15, 2005 and denied on July 19, 2006 (LD 13, 14).[1]

The first petition was denied on March 14, 2002, nine months before the commencement of the one-year period on January 15, 2003. A tolling provision has no applicability where the period to be tolled has not commenced. See Hill v. Keane, 984 F.Supp. 157, 159 (E.D.N.Y. 1997), abrogated on other grounds, Bennett v. Artuz, 199 F.3d 116, 122 (2d Cir. 1999) (state collateral action filed before commencement of limitations period does not toll limitation period), affirmed, 531 U.S. 4. Although it may seem self-evident, a properly filed state petition cannot toll a limitation period that, as is the case here, has not even commenced to run. This is necessarily so because the period of pendency of the state petition, which defines the amount of tolling, and the period of the statute of limitation do not intersect or overlap at any point. Thus, the first state petition had no tolling implications for Petitioner.

Respondent argues that the interval between the first and second petitions is not entitled to interval tolling because of the delay between the denial of the first petition and the filing of the

---

[1]In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379 (1988). The rule is premised on the pro se prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271. The Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA. Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), amended May 23, 2001, overruled on other grounds, Carey v. Saffold, 536 U.S. 214, 226 (2002). The date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003). Accordingly, for all five petitions, the Court will consider the date of signing of the petition (or the date of signing of the proof of service if no signature appears on the petition) as the operative date of filing under the mailbox rule.

second petition. The Court agrees.

In reviewing habeas petitions originating from California, the Ninth Circuit formerly employed a rule that where the California courts did not explicitly dismiss for lack of timeliness, the petition was presumed timely and was deemed "pending." In Evans v. Chavis, the Supreme Court rejected this approach, requiring instead that the lower federal courts determine whether a state habeas petition was filed within a reasonable period of time. Evans, 546 U.S. at 198 ("That is to say, without using a merits determination as an 'absolute bellwether' (as to timeliness), the federal court must decide whether the filing of the request for state court appellate review (in state collateral review proceedings) was made within what California would consider a 'reasonable time.'"). However, "'[w]hen a post-conviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).'" Bonner v. Carey, 425 F.3d 1145, 1148 (9th Cir. 2005)(quoting Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005)); see also Carey v. Saffold, 536 U.S. at 226.

Therefore, under the analysis mandated by the Supreme Court's decisions in Pace and Evans, this Court must first determine whether the state court denied Petitioner's habeas application(s) as untimely. If so, that is the end of the matter for purposes of statutory tolling because the petition was then never properly filed and Petitioner would not be entitled to any period of tolling under § 2242(d)(2), either for the pendency of the petition itself or for the interval between that petition and the denial of the previous petition. Bonner, 425 F.3d at 1148-1149.

However, if the state court did not expressly deny the habeas petition(s) as untimely, this Court is charged with the duty of independently determining whether Petitioner's request for state court collateral review were filed within what California would consider a "reasonable time." Evans, 546 U.S. at 198. If so, then the state petition was properly filed and Petitioner is entitled to interval tolling.[2]

In Evans, the Supreme Court found that a six-month delay was unreasonable. Id. The Supreme Court, recognizing that California did not have strict time deadlines for the filing of a habeas petition at the next appellate level, nevertheless indicated that most states provide for a

---

[2]Neither the Ninth Circuit nor the United States Supreme Court has addressed whether a delay in filing may deprive a petitioner of statutory tolling for the pendency of an otherwise properly filed state petition itself when the state court does not expressly indicate that the petition was untimely. Presently, Evans only affects entitlement to interval tolling.

shorter period of 30 to 60 days within which to timely file a petition at the next appellate level. Evans, 546 U.S. at 201. After Evans, however, it was left to the federal district courts in California to carry out the Supreme Court's mandate of determining, in appropriate cases, whether the petitioners' delays in filing state petitions were reasonable. Understandably, given the uncertain scope of California's "reasonable time" standard, the cases have not been entirely consistent. However, a consensus appears to be emerging in California that any delay of sixty days or less is per se reasonable, but that any delay "substantially" longer than sixty days is not reasonable. Compare Culver v. Director of Corrections, 450 F.Supp.2d 1135, 1140-1141 (C.D. Cal. 2006)(delays of 97 and 71 days unreasonable); Forrister v. Woodford, 2007 WL 809991, *2-3 (E.D. Cal. 2007)(88 day delay unreasonable); Hunt v. Felker, 2008 WL 364995 (E.D. Cal. 2008)(70 day delay unreasonable); Swain v. Small, 2009 WL 111573 (C.D.Cal. Jan. 12, 2009)(89 day delay unreasonable); Livermore v. Watson, 556 F.Supp. 2d 1112, 1117 (E.D.Cal. 2008)(78 day delay unreasonable; Bridges v. Runnels, 2007 WL 2695177 *2 (E.D.Cal. Sept. 11, 2007)(76 day delay unreasonable), with Reddick v. Felker, 2008 WL 4754812 *3 (E.D.Cal. Oct. 29, 2008)(64 day delay not "substantially" greater than sixty days); Payne v. Davis, 2008 WL 941969 *4 (N.D.Cal. Mar. 31, 2008 (63-day delay "well within the 'reasonable' delay of thirty to sixty days in Evans"). Moreover, even when the delay "significantly" exceeds sixty days, some courts have found the delay reasonable when the subsequent petition is substantially rewritten. E.g., Osumi v. Giurbino, 445 F.Supp. 2d 1152, 1158-1159 (C.D.Cal. 2006)(3 month delay not unreasonable given lengthy appellate briefs and petitioner's substantial re-writing of habeas petition following denial by superior court); Stowers v. Evans, 2006 WL 829140 (E.D.Cal. 2006)(87-day delay not unreasonable because second petition was substantially re-written); Warburton v. Walker, 548 F.Supp.2d 835, 840 (C.D. Cal. 2008)(69-day delay reasonable because petitioner amended petition before filing in Court of Appeal).

Here, the delay between the denial of the first petition on March 14, 2002 and the filing of the second petition on August 30, 2003 was over seventeen months, a period well outside the range of what district courts, the Ninth Circuit, and the United States Supreme Court have considered reasonable for California inmates. Evans, 546 U.S. at 198. Thus, Petitioner is not entitled to interval tolling from the commencement of the one-year limitation period on January 15, 2003, until the

second petition was filed on August 30, 2003, a period of 227 days.[3]

Respondent next contends that Petitioner is not entitled to interval tolling for the period between the denial of the second petition on January 5, 2004 and the filing of the third petition on March 19, 2004, a period of seventy-four days. In the cases discussed above that construe what is a reasonable delay in California, the federal courts have consistently found periods in excess of seventy days to be unreasonable. Delays of between sixty and seventy days have been found reasonable generally only when the subsequent state application contains substantially different or re-worked arguments that could arguably justify the additional time the petitioner spent preparing the application. That is not the case here. The third petition is essentially a handwritten duplicate of the second petition, although Petitioner appended to the third petition a copy of the second petition and the Superior Court's written denial. Given that Petitioner undertook no revision or rewriting of the third petition but merely rephrased the same allegations contained in the second petition, and in light of the cases cited above interpreting Evans, the Court concludes that a delay of 74 days was unreasonable. Accordingly, Petitioner is not entitled to tolling for the interval prior to the third petition or for the pendency of the third petition. Adding the 74 days to the previous 227 days that had already expired meant that, at the filing of the third petition, 301 days of Petitioner's 365 days had expired and only 64 days remained.

Assuming, without deciding, that the remaining petitions were properly filed and therefore entitled Petitioner to both tolling for pendency of the petitions and interval tolling, the one-year period would have recommenced after the denial of his last petition by the California Supreme Court on July 19, 2006. Petitioner signed his petition on November 1, 2006 and filed in the Central District of California on November 9, 2006. Therefore, the Court, pursuant to the mailbox rule, will consider November 1, 2006 to be the date of filing. As mentioned, the one-year period re-commenced on July 20, 2006 at which point Petitioner had 64 days remaining. The 64 days expired

---

[3]The Court's calculation of the running of the one-year statute varies from Respondent's motion to dismiss because Respondent, in most instances, has used the actual filing date of the state petitions whereas the Court is giving Petitioner the benefit of the doubt by using the signature date pursuant to the mailbox rule.

on September 21, 2006. Thus, the instant petition is untimely by forty days.[4] Hence, unless Petitioner is entitled to equitable tolling, the petition should be dismissed.

D. Equitable Tolling

The limitation period is subject to equitable tolling when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005)(internal quotation marks and citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. at 418. "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F. 3d 1063, 1066 (9th Cir. 2002)(citation omitted). As a consequence, "equitable tolling is unavailable in most cases." Miles, 187 F. 3d at 1107.

Here, Petitioner does not expressly make a claim for entitlement to equitable tolling. Instead, he impliedly argues that he is entitled to some form of relief for his claim of actual innocence. He is mistaken.

Neither the Supreme Court nor the Ninth Circuit has addressed whether there is an actual innocence exception to a violation of § 2244(d)'s limitation period.[5] The Ninth Circuit has only

---

[4]Respondent makes the additional argument that Petitioner is not entitled to interval tolling for the period between the denial in the 5th DCA on July 7, 2004 of the third petition and the filing of his fourth petition in the 5th DCA on July 31, 2004, a period of 23 days, because interval tolling only accrues when a petitioner is proceeding to the next higher appellate level in the state courts. (Doc. 16, pp. 6-7). However, the Court need not address this issue since the one-year period clearly expired after the denial of his fifth petition and prior to the filing of the instant petition in this Court.

[5]The difference between "newly discovered" evidence of innocence that extends the commencement point of the one-year limitation period under subdivision (d)(1)(D), and the "actual innocence" exception is that a claim filed within one year of the discovery of new evidence proceeds directly to the district court for a determination of the merits of the habeas petitioner's constitutional claims. By contrast, under the Schlup actual innocence gateway, the petitioner must clear the procedural bar of demonstrating a credible claim of actual innocence before a court will reach the meris of his constitutional claims. Because one must meet a significantly greater burden to pass through the pagetway, no petitioner would forego filing within the one-year period if possible. The actual innocence exception would be limited to the rare and extraordinary case where a petitioner can demonstrate a credible claim of actual innocence and the one-year limitations window has closed. Souter v. Jones, 395 F.3d 577, 600-601 (6th Cir. 2005). As discussed infra, Petitioner fails to meet the actual innocence gateway and the one-year window has already closed.

excused a violation of the limitation period in cases where the petitioner was entitled to equitable tolling. See Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1287-1289 (9th Cir. 1997), overruled on other grounds, Calderon v. United States Dist. Court (Kelly), 163 F. 3d 530 (9th Cir. 1998)(en banc).

Even if the Court were to conclude that an actual innocence exception to a violation of the limitations period existed, Petitioner has not met the standard for actual innocence. Petitioner must show that the alleged constitutional error "has probably resulted in the conviction of one who is actually innocent." Bousley v. United States, 118 S.Ct. 1604, 1611 (1998)(quoting Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639 (1986)). Petitioner must demonstrate that in light of the evidence no reasonable juror would have found him guilty. Schlup v. Delo, 513 U.S. 298, 329, 115 S.Ct. 851, 867-868 (1995). Petitioner fails to meet such a high standard.

At trial, the victim made a positive identification of Petitioner as the intruder and assailant who struck her with a bottle. (LD 15, p. 159). She also testified that the assailant had been wearing the same Atlanta Braves jersey and baseball cap that police later found in the vehicle driven by Petitioner. (LD 15, pp. 162, 426; 429). Police testified that the victim picked Petitioner out of a photographic lineup and that she was "positive, no doubt" about her identification. (Id. at p. 426). Police also testified that when Petitioner was questioned about the incident, he admitted he had been at the victim's house and had confronted her. (Id. at p. 433). He also told police he would pay money to he victim if she would agree not to press charges. (Id. at p. 434).

Moreover, in the motion to dismiss, Respondent has pointed out that Petitioner has frequently changed his explanation about why he waited so long to pursue David Barrera as the culprit. (Doc. 23, p. 3). In reviewing the various excerpts of Petitioner's state petitions cited by Respondent as proof of Petitioner's ever-changing explanation for his delay, the Court agrees that Petitioner's own credibility has been seriously weakened by his inability to articulate a consistent explanation about the chronology of events leading to the Barrera declaration.

Viewing all of these circumstances together, it is obvious that Petitioner has failed to demonstrate that, in light of the "newly discovered" Barrera declaration, no reasonable juror would have found him guilty. Schlup, 513 U.S. at 329. Thus, Petitioner has failed to establish his claim of

"actual innocence." Accordingly, even if there is an "actual innocence" component of equitable tolling, Petitioner cannot avail himself of it.

Thus, since Petitioner is not entitled to equitable tolling and cannot meet the actual innocence gateway, the petition is untimely by forty days and should be dismissed.

**RECOMMENDATIONS**

Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss (Doc. 16), be GRANTED and the petition for writ of habeas corpus be DISMISSED for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one year limitation period.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. **Petitioner and Respondent are forewarned that no extensions of time to file objections or replies will be granted.** The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 5, 2009** **/s/ Theresa A. Goldner**
UNITED STATES MAGISTRATE JUDGE